IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DAVID MEAD**, | * |
| Plaintiff | * |
| | * Civil No. **PJM 09-0964** |
| **LAFAYETTE FEDERAL CREDIT UNION, et al.** | * |
| Defendants | * |

## MEMORANDUM OPINION

David Mead has sued Lafayette Federal Credit Union ("Lafayette") and its employees, Robert Kemp, Devin Blum, John Farmakides, Juan Marulanda, Rhonda Polhamus, and Tina Werking, alleging various claims including a violation of the District of Columbia Consumer Protection Procedures Act, fraud, "unconscionability," anticipatory breach of contract, and declaratory judgment. Defendants have filed a Motion to Dismiss [Paper No. 9], arguing that the Court lacks jurisdiction to hear Plaintiff's claims and that Plaintiff has failed to state a claim upon which relief may be granted.

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.

### I.

Plaintiff, a professional landlord, alleges that Lafayette fraudulently induced him to enter into and modify two loan agreements. Plaintiff claims that he entered the loan agreements solely because Lafayette promised to subsequently grant him a "construction loan" for his property at 1812 North Capitol Street NW, Washington, DC, if he agreed to the two initial loans.

On April 14, 2006, Lafayette granted Plaintiff the first loan for $292,000 to convert his North Capitol Street property into condominiums. Plaintiff alleges that defendant Devin Blum,

1

president of Lafayette's subsidiary Preferred Business Exchange ("PBX"), repeatedly represented that Lafayette would grant him a "construction loan" if he transferred his property at 1643 New Jersey Avenue, NW, Washington, DC, to Lafayette as collateral for the first loan. Plaintiff claims that he acted solely for the purpose of obtaining the "construction loan" and trusted Mr. Blum, who he had previously obtained a loan from in 1993.

At the same time, Plaintiff entered into the second loan, which consisted of a line of credit of $60,000 to fund pre-development expenses for the North Capitol Street property. Originally, the parties agreed that the line of credit would mature on March 1, 2007. Both loans contained "cross-default provisions" such that a default on one loan would trigger a default on the other loan.

On July 23, 2008 and September 15, 2008, Plaintiff agreed to two 12-month extensions on the second loan for "pre-development costs for future construction projects." These agreements increased the value of the second loan from $60,000 to $75,000.

On September 30, 2008, Plaintiff signed a document entitled an "Allonge," which shortened the extension term from twelve to five months. The Allonge included an Assignment of Marital Estate Distribution which required that, upon a distribution, Mr. Mead use proceeds from a pending divorce proceeding to repay the second loan. Plaintiff claims that, although he requested time to review the Allonge, Lafayette threatened to declare a default on the second loan and commence foreclosure proceedings if he did not sign and return the agreement by the end of that day.

On or about January 20, 2009, Plaintiff accepted a check for his share of his marital proceeds ($243,150.72) from the Circuit Court of Montgomery County; he did not use the proceeds to repay Lafayette. On February 18, 2009, Mr. Blum notified Plaintiff that Lafayette

2

had declared a default on the second loan.  On February 25, 2009, Plaintiff received a Notice of Demand and Default from Lafayette.

Plaintiff alleges that Lafayette breached the two loan agreements, bound by the "cross-default" provision, by declaring him to be in default before the term expired.  Plaintiff alleges that he has paid more than $50,000 in transaction costs and more than $100,000 in interest to Lafayette.  On April 15, 2009, Plaintiff filed a Complaint in this Court, seeking rescission of three agreements with Lafayette, compensatory and punitive damages, injunctive relief, and declaratory judgment regarding his rights in connection with the two loans and his New Jersey Avenue property.

Defendants argue in their Motion to Dismiss that this Court lacks subject matter jurisdiction to hear the Complaint and, even if the Court had jurisdiction, Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff responds that the Court has subject matter jurisdiction because the Complaint seeks declaratory judgment.

## II.

Fed. R. Civ. P. 12(b)(1) provides that a party may move to dismiss a case for a lack of subject matter jurisdiction.  To survive a Rule 12(b)(1) motion to dismiss, a complaint filed in federal court must either present a federal question pursuant to 28 U.S.C. § 1331 or establish diversity jurisdiction under 28 U.S.C. § 1332.  *See* 28 U.S.C. §§ 1331-32; *see also Choice Hotels Intern., Inc. v. Shiv Hospitality, L.L.C.*, 491 F.3d 171, 175-76 (4th Cir. 2007).  When a party challenges subject matter jurisdiction, the "facts alleged in the complaint are assumed to be true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

**III.**

The Court agrees with Defendants. There is no basis for the Court to exercise subject matter jurisdiction in this case. Plaintiff has failed to establish diversity jurisdiction pursuant to 28 U.S.C. § 1332, which requires diversity of citizenship between the parties. In this case, all of the parties are residents of Maryland. Therefore, there is no basis for diversity jurisdiction.

Nor do Plaintiff's claims establish a federal question. The only issue of federal law is Plaintiff's claim pursuant to the Declaratory Judgments Act. *See* 28 U.S.C. § 2201. However, the Declaratory Judgments Act is "remedial only, and is not itself a basis for federal subject matter jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *see also Volvo GM Heavy Truck Corp. v. United States Dep't. of Labor*, 118 F.3d 205, 210 (4th Cir. 1997); *Lotz Realty Co., Inc. v. United States Dep't. of Housing and Urban Development*, 717 F.2d 929, 931 (4th Cir. 1983). Because all of Plaintiff's remaining claims are based on state law, there is no federal question at issue. Accordingly, the complaint fails to establish subject matter jurisdiction under either 28 U.S.C. § 1331 or § 1332. Therefore, Defendants' Rule 12(b)(1) Motion to Dismiss [Paper No. 9] is **GRANTED**.[1]

A separate Order will issue.

                                                                         /s/
                                            **PETER J. MESSITTE**

**June 17, 2010**                              **UNITED STATES DISTRICT JUDGE**

---

[1] Because the Court has granted the Motion to Dismiss on jurisdictional grounds, there is no need to reach the question of whether the Plaintiff has failed to state a claim for which relief may be granted under Rule 12(b)(6).